# In the United States Court of Federal Claims

No. 15-237C
(Filed under seal December 29, 2015)
(Reissued January 7, 2016)†

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
ITILITY, LLC,                    *    Pre-award bid protest; Rule 12(b)(1)
                                 *    motion to dismiss; Contractor
           Plaintiff,            *    Performance Assessment Report; 48
                                 *    C.F.R. § 42.1503(b)(1), (d); contract
   v.                            *    administration under Contract
                                 *    Disputes Act, 41 U.S.C. § 7101 et seq.;
THE UNITED STATES,               *    not ripe; no subject-matter
                                 *    jurisdiction.
           Defendant.            *
                                 *
* * * * * * * * * * * * * * * * *
```

*Isaias Alba, IV*, PilieroMazza PLLC, with whom were *Corey P. Argust*, *Ambika J. Biggs*, and *Alexander O. Levine*, all of Washington, DC, for plaintiff.

*Gregg P. Yates*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, all of Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Plaintiff, ITility, LLC, has filed this matter as a pre-award bid protest. The suit concerns a past performance evaluation ITility received from the United States Air Force and the effect of this evaluation on its ability to compete for awards in pending and future procurements. Plaintiff has moved for a preliminary injunction, and the government has responded with a motion to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States

---

† This opinion was initially filed under seal, to allow the parties to propose redactions --- which have been adopted, with the deleted text replaced in the following manner: "[XXX]." The opinion is released for publication with a few minor, non-substantive corrections.

Court of Federal Claims (RCFC). For the reasons set forth below, the government's motion is **GRANTED** and, as a consequence, plaintiff's is **DENIED**.

## I. BACKGROUND

Plaintiff was awarded Contract No. FA4890-12-D-0008-0057 by the Air Force on September 23, 2013, and served as the prime contractor on that contract through September 26, 2014. *See* Mem. in Supp. of Mot. for TRO and Prelim. Inj. (Pl.'s Br.), Ex. B ("First Sload Decl.") ¶ 2.[1] The contract sought program management support for the Air Force's Air Combat Command A6C-T User Defined Operational Picture (UDOP) Rapid Innovation Funds effort. *Id.* The Air Force was seeking to develop an application that would allow its personnel to select multiple programs/databases and "view them together on a single 'dashboard' interface," which is known as a UDOP. *See* Def.'s Mot. to Dismiss Compl. and Opp'n to Pl.'s Appl. for TRO and Mot. for Prelim. Inj. (Def.'s Mot.) at 4–5. ITility's role under the contract was to provide program management and technical support for this UDOP initiative, which included overseeing the UDOP schedule and monitoring UDOP progress, developing a "best practices" plan for using the UDOP, building a demonstration site, and facilitating collaboration relating to the UDOP initiative between units and agencies. *Id.*; *see also* Compl. ¶¶ 12–25.

After numerous disputes between ITility and the Air Force with regards to ITility's performance under the contract --- including the Air Force's issuance of three deficiency notices, a corrective action request, and a cure notice --- the Air Force finally issued a stop-work order on the contract on June 27, 2014, and the period of performance was allowed to expire. *See* Admin. R. (AR) 501; *see also* AR 158–67, 171–81, 185–86, 363. Then, on November 5, 2014, Theresa Johnson, the Air Force's Contracting Officer, issued an interim Contractor Performance Assessment Report (CPAR) concerning the contract, which rated ITility's performance as "[XXX]." Compl. ¶ 28; AR 369. Plaintiff alleges this interim CPAR used "hyperbolic language" to describe ITility's performance. Compl. ¶ 28. On November 18, 2014, ITility filed comments to the interim CPAR, contending that the CPAR was filled with "errors" and completely omitted "any discussion of [the Air Force]'s failure to meet the requirements of the contract." *Id.* ¶ 29; *see* AR 367–88 (interim CPAR with ITility's comments). ITility claimed that it was not responsible for the failed contract, instead arguing that the Air Force was to blame because the Air Force had "never given" ITility "access to the current UDOP servers within [the Air Force's] sole possession," which was necessary in order for ITility "to perform work under the [c]ontract." Compl. ¶ 13. ITility also claimed that it was unable to access a website --- hosted by another contractor, Sitscape --- that was

---

[1] A copy of this declaration was also filed as Exhibit A to the complaint.

necessary to allow it to complete its performance.[2]  *Id.* ¶¶ 14–16; First Sload Decl. ¶¶ 6–9.  On January 23, 2015, the Air Force issued a final version of the CPAR, which softened some of the language from the interim CPAR but did not amend ITility's "[XXX]" ratings.  Compl. ¶ 30; *see* AR 525–47.

On March 6, 2015, plaintiff filed the complaint in this case, framed as a bid protest, accompanied by its motion for a preliminary injunction.  Plaintiff alleges that the final CPAR issued by the Air Force contains inaccurate information and fails to provide necessary relevant information and context regarding the Air Force's hindrance of ITility's performance.  According to plaintiff, the Air Force's CPAR violates the Federal Acquisition Regulation (FAR) provision requiring that past performance evaluations include "relevant information that accurately depicts the contractor's performance" and be "based on objective facts," Compl. ¶ 5 (quoting 48 C.F.R. § 42.1503(b)(1)), because it is inaccurate and misleading and will be viewed by procuring agencies to evaluate ITility's past performance, *id.* ¶¶ 41–46.  Plaintiff also contends that the government violated the FAR requirement that agencies "consider disagreements between the parties regarding the evaluation" because the reviewing official refused to address ITility's comments disputing the CPAR.  *Id.* ¶¶ 52–55 (quoting 48 C.F.R. § 42.1503(d)).  Instead, the reviewing official merely noted that "many of the contractor comments contained within this CPAR also appear within the non-conformance documentation within the contract file," and thus the official felt there was "no need to re-address those issues here."  *Id.* ¶ 53.  Finally, plaintiff claims that the viewing of this allegedly inaccurate and misleading CPAR by procuring agencies will result in an arbitrary and capricious determination of ITility's acceptability for contract award, due to the FAR requirement that past performance be considered.  *Id.* ¶¶ 58–62 (citing 48 C.F.R. § 15.305(a)(2)).[3]

---

[2]  Sitscape had a separate agreement with USAF, which ended in November 2013, at which point Sitscape's services and websites apparently ceased working.  First Sload Decl. ¶ 8.

[3]  Plaintiff also claimed that the government had violated the FAR provision requiring the government to provide contractors with "an opportunity to post comments" in response to a performance evaluation, and that such comments must "remain a part of the record."  Compl. ¶¶ 48–51 (quoting 48 C.F.R. § 52.209-9(c)(2)).  Plaintiff alleged that the final CPAR did not include ITility's comments disputing the CPAR's conclusions, Compl. ¶ 49, as the version of that document sent to plaintiff merely stated that ITility's comments could be found in the earlier evaluation.  Ex. E to Pl.'s Br. at 3–4.  But the version of the final CPAR available to government procurement officials does contain ITility's comments, *see* AR 528–47, and thus this claim is no longer at issue.

Plaintiff alleges that it has submitted proposals in eleven currently pending procurements worth upwards of $200 million, and intends to submit proposals in response to twenty-seven additional solicitations worth upwards of $1.5 billion, all of which will involve consideration of past performance.  Compl. ¶¶ 36–37, 39; *see also* First Sload Decl. ¶¶ 61–62, 64.  ITility asserts that our court has jurisdiction over this matter as a bid protest under 28 U.S.C. § 1491(b)(1), "based on the proposed award of a contract and based on the imminent violation of a regulation in connection with a procurement or a proposed procurement as agencies are currently about to evaluate ITility's past performance" by reviewing the Air Force's CPAR.  Compl. ¶ 1.[4]  Plaintiff contends that an agency's "threatened consideration of the information" in the CPAR would violate procurement laws and regulations, *id.* ¶¶ 2–3, and that it "will suffer direct economic impact" due to these violations, *id.* ¶ 7.

To rectify the alleged violations, plaintiff has moved for a preliminary injunction, requesting that the Court enjoin the Air Force from "continuing to publish the CPAR entry" and to enjoin "the agencies to which ITility has submitted pending bids from reviewing the CPAR entry."  Pl.'s Br. at 39; *see also id.* at 1; Compl. at 18; Opp'n to Def.'s Mot. to Dismiss Compl. (Pl.'s Opp'n) at 26.  The government responded with a motion to dismiss the case for lack of subject-matter jurisdiction under RCFC 12(b)(1), arguing that a challenge to the substance of the CPAR does not come under our court's bid protest jurisdiction and that a challenge to the use of the CPAR in any on-going or future procurements is not ripe.  Def.'s Mot. at 1–2, 17–29.  Because jurisdiction is a threshold question, *see Affiliated Constr. Grp. v. United States*, 115 Fed. Cl. 607, 611 (2014) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)), the Court must first be satisfied that it has jurisdiction before considering the merits of a claim under 28 U.S.C. § 1491(b)(1).  *See Info. Tech. & Appls. Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002); *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 244 (2011).[5]

---

[4] No proposed award has actually been identified for any of the procurements mentioned in the complaint.

[5] The Federal Circuit has held that ripeness is a jurisdictional issue.  *See CBY Design Builders v. United States*, 105 Fed. Cl. 303, 331 n.22 (2012) (citing *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1316 (Fed. Cir. 2006)).

## II.  DISCUSSION

**A.  Legal Standards**

Bid protests are heard by this Court under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, § 12(a)–(b), 110 Stat. 3870, 3874.  The relevant provision states that our court:

> . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (2012).  Under this provision, "[a] non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction." *Distributed Sols., Inc. v. United States,* 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008).

The Federal Circuit has construed the ADRA term "interested party" to have the same definition as under the Competition in Contracting Act (CICA), 31 U.S.C. § 3551–56, encompassing "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps., AFL–CIO v. United States* (*AFGE* ), 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2)).  In the context of a pre-bid, pre-award protest, the requisite interest supporting standing and prejudice is established by alleging "a non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1363 (Fed. Cir. 2009); *see also Orion Tech., Inc. v. United States,* 704 F.3d 1344, 1348 (Fed. Cir. 2013).

Normally when considering a motion to dismiss --- even one based on the lack of subject-matter jurisdiction --- a court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Englewood Terrace Ltd. P'ship v. United States,* 61 Fed.Cl. 583, 584 (2004).  But when jurisdictional facts are challenged, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence.  *See McNutt v. GMAC of Ind.,* 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988).  In examining jurisdictional facts, a court may consider all relevant evidence, including material outside the pleadings.  *See Land v. Dollar,* 330 U.S. 731, 735 & n.4 (1947); *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278 (1936); *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed. Cir. 1999); *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed. Cir. 1985); *Forest Glen Props., LLC v.*

*United States,* 79 Fed. Cl. 669, 676–78 (2007); *Patton v. United States,* 64 Fed. Cl. 768, 773 (2005).

**B. Analysis**

ITility maintains that this challenge to the Air Force CPAR comes under our court's bid protest jurisdiction. It contends that the mere issuance of a CPAR containing inaccurate information violates the FAR, in connection with a procurement or proposed procurement, relying primarily on a district court opinion. *See* Pl.'s Opp'n at 4–8 (discussing, *inter alia, Pub. Warehous. Co. K.S.C. v. Def. Supply Ctr. Phila.*, 489 F. Supp. 2d 30 (D.D.C. 2007)); Compl. ¶ 4 (same). And plaintiff argues that the "threatened" or "imminent" use of the CPAR in the evaluations of its proposals in pending and future procurements constitutes an actionable claim under our bid protest jurisdiction. Compl. ¶¶ 1–3, 60–63; Pl.'s Opp'n at 1–3, 6–7, 9–11.

The government contends that challenges to the substance of contractor performance evaluations are the exclusive province of the Contract Disputes Act (CDA), 41 U.S.C. § 7101 *et seq.*, and may not be raised in a bid protest. Def.'s Mot. at 1, 17. It relies principally upon two binding precedents of the Federal Circuit. *Id.* at 17, 19–21 (citing, *inter alia, Todd Constr., L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011); *Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005)). And defendant maintains that a bid protest challenging the use of a performance evaluation is not ripe until a procuring agency actually uses the evaluation to an offeror's detriment. *Id.* at 27–29.

Plaintiff responds by arguing that the possibility that a claim could be stated under the CDA should not preclude an action relying on an independent basis, such as a bid protest; and that since the relief it seeks is not a contract remedy available under the CDA, its claims cannot be considered to be CDA claims. Pl.'s Opp'n at 2–8. After carefully considering the arguments of both parties, written and oral, the Court concludes that jurisdiction may not be exercised over the subject matter of plaintiff's complaint.

<u>*1. Contract Administration Issues Must Be Brought as CDA Claims*</u>

The first two counts of the complaint are challenges to the substance of the Air Force CPAR. In the first count, ITility alleges that the assessment of its contract performance "includes inaccurate and misleading facts, as well as material omissions," Compl. ¶ 43, in violation of 48 C.F.R. § 42.1503(b), Compl. ¶ 42. In the second count, plaintiff contends that the official who reviewed the assessment failed to "consider disagreements between the parties," in violation of 48 C.F.R. § 42.1503(d), and failed to ensure that the record contained accurate information based on objective facts, reiterating the alleged violation of 48 C.F.R. § 42.1503(b). *See* Compl. ¶¶ 52–55. Because these counts allege violations of a regulation in

connection with a procurement, ITility maintains that they may be brought under our court's 28 U.S.C. § 1491(b)(1) bid protest jurisdiction.

There are several problems with this argument. Perhaps the most fundamental problem is that, while the CPAR was indeed created "in connection with a procurement," 28 U.S.C. § 1491(b)(1), the procurement in question was one in which ITility performed as the contractor, not one in which plaintiff was merely an offeror or prospective offeror. As the Court has explained, *see Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 764, 768–69 (2014), a long line of our cases has held that the "interested party" standing to bring a bid protest does not extend to the complaints of contractors concerning the administration of contracts they have been awarded and performing. When a party objects to a decision by a federal agency that was made because that party was a government contractor, and not because the party was an offeror for a contract to be awarded, then the matter is properly viewed as seeking "relief arising under or relating to the contract" held by the party, 48 C.F.R. § 2.101, rather than presenting a circumstance in which the party's "direct economic interest would be affected by the award of the contract or by failure to award the contract," 31 U.S.C. § 3551(2).[6] Although a procurement may run through "contract completion and closeout," *see Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (quoting what was then 41 U.S.C. § 403(2), now found at 41 U.S.C. § 111), the impact of a contract award (or the failure to award) ceases to be relevant once a party becomes the contractor for that procurement. At that stage, the interest of the party changes from that of an offeror to that of a contractor, and the CDA becomes the vehicle for resolving disputes. *See Kellogg Brown & Root Servs.,* 117 Fed. Cl. at 769–70.

That a contractor's challenge to the substance of an agency's performance evaluation may be brought as a CDA claim is beyond doubt. In *Todd Construction, L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011), the Federal Circuit held that such a challenge constituted a claim for CDA purposes, as it related to the federal contract. *Id.* at 1311–16. ITility attempts to distinguish *Todd Construction* as turning on the declaratory relief sought, in contrast to the injunction it seeks in this matter. *See* Pl.'s Opp'n at 3 (citing *Todd Constr.*, 656 F.3d at 1311).[7] But while the

---

[6] This is in contrast to the circumstance in which an awardee is forced to compete again for the award due to corrective action by an agency. *See Sys. Appl. & Techs., Inc. v. United States*, 691 F.3d 1374, 1381–83 (Fed. Cir. 2012); *CBY Design Builders*, 105 Fed. Cl. at 336–37. By jeopardizing the award, the corrective action implicates the awardee's interest in the award itself, making a challenge to any alleged associated illegalities a proper subject for a bid protest. *See Kellogg Brown & Root Servs.,* 117 Fed. Cl. at 769 n.5.

[7] Plaintiff does, however, request "all other relief that the Court finds to be just and proper," Compl. at 18, which can be construed as seeking a declaratory judgment in addition to the specific injunctive relief enumerated.

Federal Circuit did describe the relief sought as "in essence a declaratory judgment that the government's performance evaluations were unfair and inaccurate," *Todd Constr.*, 656 F.3d at 1311, and did leave undecided "whether an injunction was available pursuant to the . . . 'power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just,'" *id.* at 1311 n.3 (quoting 28 U.S.C. § 1491(a)(2)), the Circuit's analysis did not concern the type of relief at issue, *see id.* at 1311–15. Instead, the subject of the relief sought was what mattered, as the Circuit found that "the unsatisfactory performance evaluations . . . relate to Todd's performance under the contract," and concluded that a valid CDA claim was one that "relates to [the contractor's] performance under the contract." *Id.* at 1313–14.

In any event, even if injunctive relief were not available under the CDA, a contractor does not convert a dispute relating to its contract performance into a bid protest by seeking such relief. As the Court explained above, the claim could still not rest on the interested party standing of an offeror. If Congress chose to withhold a form of relief from contractors in their disputes with government agencies, their recourse is to accomplish what they may with the tools that *are* given. For instance, a declaration that a CPAR was arbitrarily issued and contained inaccurate information could be communicated to procurement officials in subsequent contract competitions, and would set the stage for injunctive relief in a bid protest if that CPAR is relied upon to an offeror's prejudice.[8]

Moreover, if plaintiff's request for injunctive relief addressing the alleged substantive inaccuracies of the Air Force CPAR were to place the matters outside our court's CDA jurisdiction, the relief would still not be available in a bid protest. In considering a challenge to an agency's failure to assess a contractor's rebuttals to its performance evaluations, the Federal Circuit held that "a bid protest is not the proper forum, under FAR § 42.1503(b), to litigate [performance evaluation] disputes." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005). Although the procedural challenge to the evaluations was found to be properly brought in a bid protest, the substantive challenge was not. *Id.* at 1351–53.

In the face of this contrary, binding precedent, ITility places great weight on a district court opinion, *Public Warehousing Co. K.S.C. v. Defense Supply Ctr. Phila.*, 489 F. Supp. 2d 30 (D.D.C. 2007). *See* Pl.'s Opp'n at 6–8. In *Public Warehousing*, a contractor tried to challenge, in the U.S. District Court for the District of Columbia, an agency's refusal to provide performance evaluations of its work on two contracts, and the evaluation that agency issued regarding another contract. *Pub. Warehous.*, 489 F. Supp. 2d at 31–34. This opinion does not

---

[8] The Court notes that injunctive relief may nevertheless be available in CDA challenges to performance evaluations, under either the power to remand matters with proper direction or the power to direct the correction of applicable records. *See* 28 U.S.C. § 1491(a)(2).

persuade the Court that bid protest jurisdiction extends to challenges of the substance of performance evaluations, for several reasons.

First, the claim in that case which concerned the substance of an evaluation was conceded not to be ripe for review, as the contractor was still "in the process of exhausting its administrative remedies." *Id.* at 34. The remaining claims --- concerning the defendant agency's denial of requests for past performance information, which were made by agencies considering the contractor's bids for other contracts, *see id.* at 33 --- were distinguished by the district court from the claims found out-of-bounds in *Bannum*. *Id.* at 42 n.10. The district court explained *Bannum* as finding "that a subsequent disappointed bidder protest is not the proper place to object to the contents of an evaluation," *id.* (citing *Bannum*, 404 F.3d 1353), whereas its case was "against an evaluating agency for refusing to provide performance evaluations or information," *id.* Thus, the facts alleged in *Public Warehousing* were that agencies, in the process of conducting contract competitions, were rebuffed when requesting past performance evaluations that they evidently believed were relevant to their own procurements. The allegedly illegal refusals to provide the information were made in connection with the on-going contract competitions, regarding which the contractor was certainly an interested party under 31 U.S.C. § 3551(2). No such pattern of requests and refusals are present in ITility's case.

Second, the *Public Warehousing* decision merely held that a contractor's challenge to an agency's violation of regulations concerning performance evaluations, when framed as a request for review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, could not be heard in a district court because of the ADRA's sunset provision regarding district court jurisdiction. *See Pub. Warehous.*, 489 F. Supp. 2d at 36–37. Confined to the facts of that case, in which the ripe claims alleged violations that interfered with contract competitions, this is hardly controversial. The district court did not consider whether other statutes, such as the CDA, removed contract-related claims from its jurisdiction, and certainly did not opine on when the CDA had to be followed to bring claims within our jurisdiction.[9]

Third, to the extent that the district court's analysis reached beyond the relevant facts, this analysis was impaired by the failure of the parties to draw the CDA to the district court's attention. As a consequence, the district court's discussion rested on the incorrect premise that matters of contract administration

---

[9] The court did acknowledge that there could be obstacles to our jurisdiction over the claims of the case, such as a lack of standing. *See Pub. Warehous.*, 489 F. Supp. 2d at 42 n.10.

came under our section 1491(b) jurisdiction, *see id.* at 43–44, instead of our CDA jurisdiction, *see* 28 U.S.C. § 1491(a)(2) (citing 41 U.S.C. § 7104(b)(1)).[10]

Finally, our court's issuance of a temporary restraining order, after Public Warehousing Co. filed a bid protest here, *see Pub. Warehous. Co. K.S.C. v. United States*, No. 07-366C, 2007 U.S. Claims LEXIS 431 (June 13, 2007), is not a persuasive precedent regarding our bid protest jurisdiction over the substance of performance evaluations. Although the order necessarily touched upon the substance of the one evaluation that was issued, *see id.* at *1–*2, it contains no discussion of jurisdiction and thus has no power to persuade on the topic, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (discussing "drive-by jurisdictional rulings"). In any event, since the claims challenging the agency's refusal to provide evaluations were squarely within our bid protest jurisdiction, a restraining order could also affect the issued evaluation as a "proper and just" direction under our section 1491(b)(2) remand power.

As explained above, plaintiff's challenges to the substance of the Air Force CPAR involve questions of contract administration that must be brought under the CDA. Since ITility had not submitted a claim to the contracting officer under the CDA's requirements, *see* 41 U.S.C. § 7103(a), our court lacks subject-matter jurisdiction over the first two counts of the complaint. *See Kellogg Brown & Root Servs.*, 117 Fed. Cl. at 770.

### 2. No Ripe Claim Is Stated Regarding the Use of the CPAR

As the government correctly notes, the use of a performance evaluation in a competitive procurement may be challenged in a bid protest. *See* Def.'s Mot. at 22 (citing *AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 695 (2014); *Gulf Grp., Inc. v. United States*, 61 Fed. Cl. 338, 357–59 (2004); *Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99, 117 (2003)). Under a very deferential review standard, *see Gulf Grp.*, 61 Fed. Cl. at 357, such a challenge is limited to whether an agency conducting an award competition rationally relied upon the evaluation record and

---

[10] The opinion also inaccurately found that the "violation of statute or regulation" clause of section 1491(b)(1) would be superfluous if limited to bid protests, misconstruing the Federal Circuit's rejection of the argument that the clause is limited to challenges to *contract awards*. *See Pub. Warehous.*, 489 F. Supp. 2d at 40 (citing *RAMCOR Servs. Grp. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999)). But in addition to actions that affect bid protests, such as an override of the CICA stay, *see RAMCOR*, 185 F.3d at 1290, the clause provides jurisdiction over pre-award exclusions from competition, *see Orion Tech.*, 704 F.3d at 1347; *Med. Dev. Int'l, Inc. v. United States*, 89 Fed. Cl. 691, 701 (2009), as well as other decisions that prevent interested parties from competing for awards, such as solicitation cancellations, *see MORI Assocs. v. United States*, 102 Fed. Cl. 503, 522–25 (2011), or the decision to forgo competition, *see Distributed Sols.*, 539 F.3d at 1346.

to procedural defects with the report, as the substance of the underlying CPAR could not be litigated in a bid protest, *Bannum*, 404 F.3d at 1353.[11]

The third count of the complaint concerns the use of the Air Force CPAR by other agencies. *See* Compl. ¶¶ 58–62. But instead of alleging that the CPAR has been relied upon to its detriment, ITility discusses prospective use only, employing such formulations as "any reliance upon that CPAR . . . *would be* arbitrary and capricious," *id.* ¶ 58 (emphasis added); "review of the CPAR entry at issue *will be* arbitrary," *id.* ¶ 60 (emphasis added); "ITility's position as an offeror . . . *will be* adversely affected," *id.* ¶ 61 (emphasis added); and "[p]rocuring agencies *will view* the inaccurate and unfair CPAR entry . . . and *likely deem* ITility unacceptable," *id.* ¶ 62 (emphasis added). *See also id.* ¶ 1 (alleging an "imminent violation . . . as agencies are currently about to evaluate ITility's past performance"); *id.* ¶ 2 (alleging "threatened consideration" of the CPAR information).

Concerning this count, it might be enough merely to note that our bid protest jurisdiction extends over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), and not over "threatened" or "imminent" or "potential" or "future" violations. That these matters involve something that has occurred, and not what might occur, is further underscored by the ADRA's reference to "the agency's decision" that is under review in such cases, 28 U.S.C. § 1491(b)(4). Plaintiff argues that suitably final decisions are at issue in this protest, both the decision to issue the CPAR and an unspecified "plan to consider that CPAR entry." Pl.'s Opp'n at 10.[12] The latter is presumably a consequence of the FAR provision describing the requirement that past performance be considered in evaluating offers. *See id.* at 11 (citing 48 C.F.R. § 15.305(a)(2)).

But the requirement that procurement officials consider past performance information does not mean that they will find any particular performance evaluation to be relevant to the procurement they are conducting, much less material to their assessment of an offeror's ability to perform. Unlike the situation in which an agency has allegedly violated a statute through the terms of an issued

---

[11] Even if plaintiff's allegation that the reviewing officer failed to consider the parties' disagreements, in violation of 48 C.F.R. § 42.1503(d), were viewed as a procedural rather than a substantive challenge, the matter would not be ripe for the reasons explained.

[12] Although both parties discuss ripeness in terms of the APA's required "final agency action," *see* Pl.'s Opp'n at 10; Def.'s Mot. at 28, that portion of the APA was not incorporated into the ADRA. *See CBY Design Builders*, 105 Fed. Cl. at 336. But whether a "final agency action" or a "decision" is required, plaintiff has not sufficiently alleged either.

solicitation, *see Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362–63 (Fed. Cir. 2009), no decision has yet been made that can be said to have inflicted a non-trivial competitive injury upon plaintiff. Nor can such a decision be presumed. Not only does the CPAR contain ITility's comments, *see* AR 528–47, but the contract performed was a rather modest effort, totaling only $180,000, AR 525, and utilizing only 1.2 FTEs, AR 149. Plaintiff estimated that the eleven procurements for which it submitted offers totaled more than $200 million in potential awards, Compl. ¶¶ 36, 39 --- an average of more than $18 million per contract.[13] It is thus far from likely that a contract of the size performed for the Air Force could even be found relevant to these procurements, and plaintiff has not alleged anything to the contrary.[14]

In sum, the use of a CPAR by a procuring agency may not be challenged before it has actually been used. ITility has alleged no assessment of its ability, in a contract award competition, that relied upon the Air Force's CPAR to its detriment. Accordingly, the claims in count three of the complaint are not ripe for review, and must be dismissed for lack of subject-matter jurisdiction.

### III. CONCLUSION

For the reasons set forth above, the government's motion to dismiss the case for lack of subject-matter jurisdiction, under RCFC 12(b)(1), is **GRANTED**, and plaintiff's motion for a preliminary injunction must therefore be **DENIED**. The Clerk shall close the case.

**IT IS SO ORDERED.**

              s/ Victor J. Wolski
              **VICTOR J. WOLSKI**
              Judge

---

[13] Plaintiff identified another twenty-seven solicitations to which it intended to respond which totaled more than $1.5 billion, Compl. ¶¶ 37, 39, which would average more than $55 million per contract.

[14] Indeed, while this protest has been pending, ITility has not filed any supplemental complaints, under RCFC 15(d), alleging that the CPAR has been relied upon to its detriment.